UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRANDMOTHERS GROWING GOODNESS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DOUG BURGUM, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-00513 (AHA) |

### Transfer Order

    Grandmothers Growing Goodness and The Wilderness Society sue the Department of the Interior and its Bureau of Land Management ("BLM"), as well as the Interior Secretary and other government officials, asking for declaratory and injunctive relief regarding several government actions taken with respect to oil and gas development in Alaska's National Petroleum Reserve. Specifically, the plaintiffs challenge the government's cancellation of a particular right of way in the reserve, the record of decision for the reserve's 2025 integrated activity plan, a recent notice of sale for leases on tracts in and around the right of way, and any leases issued on those tracts. ECF No. 1 ¶ 1. The plaintiffs filed a preliminary injunction motion on February 20, 2026, to enjoin the sale pending litigation. *See* ECF No. 14. On February 23, 2026, the government moved to transfer the case to the District of Alaska. *See* ECF No. 16. The court grants the transfer motion.

    A court may transfer a case to another district where venue is proper "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Section 1404(a) "place[s] discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487

1

U.S. 22, 29 (1988) (quotation marks and citation omitted). Such transfer does not require that the initial forum be "wrong." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). But "transfer in derogation of properly laid venue" should "be justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in that statute." *Starnes v. McGuire*, 512 F.2d 918, 925 (D.C. Cir. 1974).

As a judge of this court once put it: "Deciding a § 1404 motion to transfer is like dancing a Texas two-step: First, could the suit have been brought in the transferee court? And second, should the suit be brought in the transferee court?" *Gyau v. Sessions*, No. 18-cv-407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616–43 (1964)). Here, the plaintiffs' claims clearly could have been brought in the District of Alaska; no one disputes that. *See* ECF No. 16 at 5; ECF No. 24. So, the court focuses on the second question, which requires consideration of the relevant "public and private interests" at play. *McAfee, LLC v. U.S. Citizenship and Immigration Servs.*, No. 19-cv-2981, 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019) (quoting *Gyau*, 2018 WL 4964502, at *1); *see Alaska Indus. Dev. & Exp. Auth. v. U.S. Dep't of Interior ("AIDEA")*, No. 23-cv-3126, 2024 WL 756602, at *3 (D.D.C. Feb. 23, 2024) (noting "the decision of whether to transfer an action . . . is guided by a set of private interest and public interest factors"). Under those considerations, this suit should have been filed in the District of Alaska.

The public interest favors transfer. Courts generally consider three factors: "(1) the local interest in having controversies decided 'at home,' (2) the transferee's familiarity with the parties, facts, and governing law, and (3) the relative congestion of the transferee and transferor's dockets." *AIDEA*, 2024 WL 756602, at *3 (citing *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)). First, the local interest here is apparent because the plaintiffs' core concern is

access to and development on Alaskan land. The complaint repeatedly emphasizes local significance. *See* ECF No. 1 ¶ 2 (stating the reserve is "central to the subsistence way of life of Iñupiat communities that have depended on its resources for millennia"); *Id.* ¶ 11 (stating the mission of plaintiff Grandmothers Growing Goodness, based in Nuiqsut, Alaska, is "to protect the Reserve's subsistence resources, cultural heritage, and the health and safety of Iñupiat communities" and that its members "depend on the Reserve for subsistence hunting, traditional cultural practices, and their physical well-being—interests directly threatened by oil and gas activity in the TLSA and surrounding lands"). Although the plaintiffs argue against transfer because there is a "national public interest in the correct resolution of this statutory question," that statement is far too general to surpass or meet Alaska's local interest, and a federal court in Alaska is equally capable of correct resolution of the statutory questions presented. ECF No. 24 at 11; *see AIDEA*, 2024 WL 756602, at *3–4 (concluding local interests in Alaska predominated over any national interest in the case).

Second, the District of Alaska has particular familiarity with the parties, facts, and issues here. That court has addressed and is currently considering challenges to various decisions about the reserve. *See, e.g.*, *Ctr. for Biological Diversity v. Burgum*, No. 20-cv-00206 (D. Alaska Aug. 24, 2020); *N. Ala. Env't Ctr. v. Burgum*, No. 20-cv-00207 (D. Alaska Aug. 24, 2020); *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, No. 23-cv-00058 (D. Alaska Mar. 13, 2023); *Sovereign Iñupiat for a Living Arctic v. Burgum*, No. 25-cv-00356 (D. Alaska Dec. 11, 2025); *Sovereign Iñupiat for a Living Arctic v. Burgum*, No. 26-cv-00078 (D. Alaska Feb. 19, 2026). Indeed, one of the two plaintiffs here has itself been involved in three such challenges. *See N. Ala. Env't Ctr. v. Burgum*, No. 20-cv-00207; *Sovereign Iñupiat for a Living Arctic v. Burgum*, No. 25-cv-00356; *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, No. 23-cv-00058. Not

surprisingly then, other parties seeking similar relief to the plaintiffs in this case, including claims related to the same record of decision and lease sale, have filed those claims in the District of Alaska. *See* Third Amended Complaint at 56–57, *Ctr. for Biological Diversity v. Burgum*, No. 20-cv-00206 (D. Alaska Feb. 26, 2026), ECF No. 139 (requesting that the court "[e]njoin BLM from holding any lease sale or issuing leases in reliance on the 2020 EIS or 2025 EA," "[v]acate any leases issued as a result of the 2026 lease sale," and "[e]njoin any ground-disturbing activity on leases issued as a result of the 2026 lease sale"); Complaint at 38, *Sovereign Iñupiat for a Living Arctic v. Burgum*, No. 26-cv-00078 (D. Alaska Feb. 19, 2026), ECF No. 1 (requesting that the court "[v]acate and set aside as unlawful the 2025 IAP and the related ROD, EIS, and Section 810 Evaluation, and any decisions that rely on it, including any lease sale decisions and leases"). The potential benefit of prior history and familiarity with these facts and issues is evident from the plaintiffs' pleadings in this case, which attach exhibits related to the District of Alaska proceedings, including briefing from one of the cases. *See, e.g.*, ECF Nos. 14-27, 14-46. The plaintiffs respond that this district is "the nation's preeminent forum for APA challenges," ECF No. 24 at 9, but because the plaintiffs' "claims are federal, the courts are presumed equally able to address the governing law," *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40 (D.D.C. 2010). The District of Alaska's familiarity with the facts and issues in this case "weighs heavily in favor of transfer." *Id.* at 41.

The third public interest consideration, relative congestion of courts in the two districts, does not point strongly in any direction. The parties agree this factor carries little weight here. ECF No. 16 at 8–9 (arguing "the relative congestion factor does not alter this analysis" and "plays a minor role"); ECF No. 24 at 10 (agreeing with the government that this factor "plays a minor role"). And the plaintiffs do not contest the government's representation that the caseload here "has

typically been slightly heavier than in the District of Alaska." ECF No. 16 at 8. Taking these considerations together, the public interest favors transfer.

The private interests do not suggest otherwise. Those include "the plaintiff's preferred forum, the defendant's preferred forum, where the claim arose, and the convenience to the parties, to the witnesses, and to the evidence." *McAfee*, 2019 WL 6051559, at *1 (quoting *Gyau*, 2018 WL 4964502, at *1). As to the first, the court "must afford some deference to the plaintiff's choice of forum." *Trout Unlimited*, 944 F. Supp. at 17. However, where, as here, "transfer is sought to the forum with which plaintiff has substantial ties and where the subject matter of the lawsuit is connected," less deference is warranted. *AIDEA*, 2024 WL 756602, at *5 (cleaned up) (quoting *Trout Unlimited*, 944 F. Supp. at 17). As the court has described, the plaintiffs' concerns here arise from their significant connections to the District of Alaska that are intertwined with the subject matter of this case—development on the reserve and policy decisions regarding such development. *See* ECF No. 1 ¶ 12 (stating that The Wilderness Society, although based in this district, has members who "rely on the Reserve for recreation, scientific research, wildlife viewing, photography, and aesthetic and professional pursuits"). The plaintiffs emphasize there is also a connection to D.C., "where the Secretary signed the 2025 IAP ROD, the Deputy Secretary signed the Right of Way cancellation, and the 2025 Budget Reconciliation Act interpretation underlying both decisions was formulated." ECF No. 24 at 7. But precedent makes clear that "signing and promulgating are not magic acts that somehow transform a transferable case into an un-transferable one." *AIDEA*, 2024 WL 756602, at *5 (quoting *Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 121 (D.D.C. 2015)). The weight afforded to the plaintiffs' choice of forum is accordingly overcome by their ties and their claims' strong connection to the transferee forum.

5

On the other side, the government's preferred forum is Alaska. While that choice is typically entitled less deference than the plaintiff's choice, here the government's preference warrants more weight than usual because it asks for "transfer to a forum where related proceedings are already pending." *Seafreeze Shoreside Inc. v. United States Dep't of the Interior*, No. 21-cv-3276, 2022 WL 3906934, at *7 (D.D.C. June 27, 2022). Given the interest "to unify related proceedings in the district where the cases were first filed," this factor weighs in favor of transfer. *Id.*[1]

The third private factor, where the claims arose, is neutral. The plaintiffs again point to the fact that some of the challenged decisions were made or issued by senior government officials in D.C. *See* ECF No. 24 at 12. At the same time, they recognize that the challenged notice of sale was issued by BLM's Alaskan office. *Id.* at 1. And they do not dispute the government's assertion that "implementation efforts" were "performed by agency personnel in Alaska" or that the "concrete impacts" of the challenged actions will be felt in Alaska. ECF No. 16 at 10. Ultimately, while D.C.-based officials were no doubt involved in the challenged decisions, the court "is not persuaded that [their] alleged degree of involvement is substantial enough for this factor to tip the scales against transfer." *AIDEA*, 2024 WL 756602, at *5.

Finally, the parties both acknowledge that in an APA case like this one, which is likely to be resolved based on the administrative record, the convenience to parties and witnesses and access to evidence are secondary, neutral considerations. *See* ECF No. 16 at 10 (noting this factor is "secondary because any review on the merits here will be through cross-motions for summary

---

[1] The plaintiffs argue that their case relates to another case pending before this court, *Nuiqsut Trilateral, Inc. v. Burgum*, No. 26-cv-00239 (D.D.C. Jan. 28, 2026), and that transferring this case "while *Nuiqsut Trilateral* remains in this District" could create a risk of inconsistent rulings. ECF No. 24 at 9. The government has separately moved to transfer that case to the District of Alaska; the court will consider and resolve each motion on its own terms.

judgment based on an administrative record, and is therefore unlikely to involve presentation of witnesses or discovery"); ECF No. 24 at 12 (arguing this factor is "neutral" and "secondary" because "this case will be resolved on cross-motions for summary judgment based on the administrative record"). Because this factor is "inconsequential in this case," it does not factor into the court's decision to transfer. *AIDEA*, 2024 WL 756602, at *5.

Based on the required considerations, the court concludes that between the districts of D.C. and Alaska, "the superior forum for this action is the one where the subject matter of the dispute is located, where local interests are uniquely affected," and "where related litigation has occurred and, indeed, is ongoing." *Id.* at *3. The court accordingly grants the government's motion to transfer, ECF No. 16. The Clerk of Court is directed to transfer this case to the District of Alaska forthwith.

                                                              AMIR H. ALI
                                                              United States District Judge

Date:   March 2, 2026